MATTER OF M/S "TENNA DAN"

In FINE Proceedings

PHI-10/99.213

*Decided by Board February 16, 1962*

Fine—Section 254(a)(2)—Absolute duty to detain.

The temporary removal of a crewman from a vessel, by order of the Service, for fingerprinting after he has been refused landing privileges does not relieve the responsible parties from the absolute duty to detain the crewman on board after he has been returned to the vessel from fingerprinting. The effect of the "Refused" landing permit was not terminated but merely suspended until the crewman's return aboard the ship.

IN RE: M/S *Tenna Dan*, which arrived at the port of Philadelphia, Pennsylvania, from foreign, via another United States port on September 12, 1961. Alien crewman involved: S—A—C—C—.

## BEFORE THE BOARD

DISCUSSION: This appeal is directed to an administrative penalty of $1,000 which the District Director at Philadelphia, finding no justification for mitigation, has ordered imposed on the Stockard Shipping and Terminal Corporation, as agents for the vessel. The District Director charges that said agents failed to detain the above-named alien crewman aboard the vessel despite the fact that he had not been granted a conditional landing permit.

This vessel made its first United States port call at New York on September 9, 1961, where immigration inspection was accorded its crew. The result of such inspection was that this crewman was not granted shore leave privileges, as evidenced by a Form I-95 "Refused" issued as to him and served on the Master. On September 11, 1961, pursuant to written notice from the Service to the Master, the vessel's chief wireless operator escorted this crewman to the Immigration office at 20 West Broadway, New York, so that he might be photographed and fingerprinted in connection with his application for a permanent type conditional landing permit and identification card, Form I-184 (8 CFR 252.4). When this had been accomplished, the chief wireless operator escorted the crewman back to the vessel and informed the Master that the Service had issued no further orders or instructions with respect to the crewman. Under these circumstances, the Master believed that it was

no longer necessary for him to guard the crewman and he did not do so. However, he did immediately notify the Service telephonically when it was reported to him on September 15, 1961, after the vessel had proceeded coastwise to the port of Philadelphia, that the crewman was missing from the ship. Five days after he had left it, and specifically on September 19, 1961, the escapee was taken into custody by a Marine guard when he returned to the pier where his ship had been berthed. He was then turned over to the Immigration Service and later removed from the United States by the responsible parties without expense to the Government on another vessel of the same line.

This statute places upon the parties named therein as being responsible for the operation of a vessel, agents included, the absolute duty of detaining aboard the vessel at all times aliens serving thereon as crewmen, unless and until that duty of detention is lifted by an immigration officer granting the crewmen shore leave privileges. It is no defense to the imposition of a penalty thereunder that the Service later ordered the detainee taken ashore so that his further processing might be completed, because the crewman did not escape until after he had been placed back aboard the vessel and the "Refused" landing permit was then still outstanding. That is, the effect of the "Refused" landing permit was not terminated but merely suspended until the crewman's return aboard the ship.

Upon the basis of all the evidence presented, as hereinbefore summarized, it is found—

(1) that the M/S *Tenna Dan* arrived at Philadelphia on September 12, 1961, having on board the alien crewman S—A—C—C—, who was not granted a conditional landing permit;

(2) that said crewman escaped from the vessel on or about September 14, or 15, 1961, and was at large in the United States for several days; and

(3) that the Stockard Shipping and Terminal Corporation acted as agents for the vessel at Philadelphia.

Accordingly, it is concluded—

that under section 254(a)(2) of the Immigration and Nationality Act (8 U.S.C. 1284), liability to fine has been incurred by the Stockard Shipping and Terminal Corporation.

The only issue remaining is whether mitigation of this fine is merited and, if so, to what extent. On the basis of the factors hereinafter discussed, it is our opinion that some reduction in the amount of the fine is warranted. However, we cannot agree with the carrier that mitigation thereof to the minimum amount permissible under the statute, to wit, down to $200, is warranted.

It is established and uncontested that the vessel's Master telephonically informed the Service immediately upon learning of the

crewman's escape from the vessel. He also furnished such information with respect to the alien's possible movements in the United States as was available to him. Such action obviously demonstrates cooperation with the Service to an extent over and above that required by law under pain of penalty of $10 (section 251(b), (d), Immigration and Nationality Act; 8 U.S.C. 1281). Accordingly, we consider this as a factor calling for a reduction in the amount of the penalty to some extent.

It is also established in the record and uncontested here that the responsible parties had this escapee removed from the United States aboard another vessel of the same line promptly and without expense to the government. We think that such prompt action in this respect by the responsible parties was not only beneficial to them, since they were required to remove him from the United States under pain of penalty of $300 under another section of the law (section 243(e) of the Immigration and Nationality Act; 8 U.S.C. 1253), but was also beneficial to the Service in that it relieved them of the necessity of instituting deportation proceedings against the crewman and additional fine proceedings against the responsible parties. Accordingly, we believe that this factor must be considered in arriving at a just determination of the amount of mitigation warranted in the matter.

Furthermore, in our estimation, the record demonstrates that the Master did not take the usual precautions to keep this crewman aboard the ship because of the Service's order to have the crewman brought ashore for further processing. This was a novel experience for the Master and a deviation from the usual routine followed as to crewmen aboard his vessel when previously in United States ports. We feel that this explains why he did not take all the precautions normally required as to a detainee and reflects that the violation was not an intentional disregard of the immigration laws of the United States on his part. We, therefore, are of the opinion that this factor is also one properly to be considered in arriving at a fair amount of mitigation in this matter.

Upon careful consideration of the foregoing, together with the representations throughout, we feel that this penalty should be reduced to the extent of $500; but we cannot agree with the carrier that it should be reduced to $200. No claim has been advanced or showing made that the responsible parties exerted any efforts of their own to locate and/or apprehend the escapee, and his ultimate apprehension is not traceable in any definite way to their efforts.

**ORDER:** It is ordered that the decision of the District Director be modified to provide for mitigation of the penalty to the extent of $500 and that as so modified the decision of said official be and the same is hereby affirmed. The penalty permitted to stand is $500.

566